FILED
2026 Apr-14  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **VIANNY L. PEDROZA GIL,**<br>**By Candace Pimentel, Next Friend** ] | |
| ] | |
| **Petitioner,** ] | |
| ] | |
| **v.** ] | **7:26-cv-498-EGL-GMB** |
| ] | |
| **SHERIFF OF PICKENS COUNTY** ]<br>**et al.,** ] | |
| ] | |
| **Respondents.** ] | |

### MEMORANDUM OPINION

On March 26, 2026, Petitioner Vianny Pedroza Gil filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 through Candace Pimentel, Next Friend. Doc. 1. With the permission of the Court, she amended her petition on April 6, 2026. *See* Docs. 10, 12. Because it plainly appears from the petition that Gil is not entitled to relief, the Court **DENIES** her habeas petition (Doc. 10).

### I.    FACTUAL BACKGROUND

Gil is a Colombian national who entered the United States in October 2022. Docs. 13 at 2, 13-1 at 2. After presenting herself at the border and being briefly detained, Gil was paroled into the United States. Doc. 13 at 2-3. On December 3, 2025, Gil was issued a Notice to Appear charging her as being an alien present in the United States who has not been admitted or paroled under Section

212(a)(6)(A)(i) of the INA and an immigrant not in possession of a valid unexpired passport, or other suitable travel document or document of identity and nationality under Section 212(a)(7)(A)(i)(I) of the INA. *See generally* Doc. 13-2.

On March 23, 2026, Gil was arrested and taken to the Pickens County Detention Center. *See* Doc. 1 at 1-2. She filed her habeas petition on March 26, 2026. *Id.* On March 27, 2026, she was transferred to the South Louisiana Processing Center where she remains detained. *See* Docs. 13 at 3, 13-3 at 2.

## II.    JURISDICTION

The habeas statute permits district courts to grant relief only "within their respective jurisdictions." 28 U.S.C. § 2241(a). Jurisdiction depends on the petitioner's location at the time of filing. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 443 (2004). A subsequent transfer after the petition is filed does not divest a court of jurisdiction. *See id.* at 440-41 (discussing *Ex parte Endo*, 323 U.S. 283, 304-06 (1944)).

Gil was in custody at the Pickens County Detention Center in Carrollton, Alabama, when she filed her petition. *See generally* Doc. 1. Because that facility lies within this district, the Court has jurisdiction over the petition.

## III.   STATUTORY BACKGROUND

Though Gil does not expressly challenge her classification under the Immigration and Nationality Act, that classification is nonetheless central to her claims.

Section 1225(a)(1) of the INA provides that all aliens "present in the United States who ha[ve] not been admitted or who arrive[] in the United States" are deemed "applicant[s] for admission." 8 U.S.C. § 1225(a)(1). The INA defines "admission," as the "lawful entry … into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). That requires formal, lawful entry. *Morales v. Noem*, No. 25-62598, 2026 WL 236307, at *4 (S.D. Fla. Jan. 29, 2026). An alien who enters without inspection therefore remains an "applicant for admission," regardless of how long he has remained in the country or how far he has traveled from the border. *See Mejia Olalde v. Noem*, 2025 WL 3131942, at *2-3 (E.D. Mo. Nov. 10, 2025); *Rojas v. Olson*, 2025 WL 3033967, at *6, *8 (E.D. Wis. Oct. 30, 2025).

Section 1225(b)(2)(A) directs that an immigration officer "shall" detain "an alien who is an applicant for admission," if the officer determines that the alien "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Like subsection (a), subsection (b)(2) contains no exception based on the duration of the alien's presence in the United States or the depth of the alien's incursion into

the country. That lack of exceptions is particularly noticeable given that other parts of § 1225 do categorize certain aliens based on whether they are "arriving" or whether they have "been physically present in the United States" for a period of time. *See id.* §§ 1225(a)(2), (b)(1)(A)(iii)(II). But under § 1225(b)(2)(A), subject only to limited statutory exceptions, Congress required DHS to detain all "applicant[s] for admission" who are not "clearly and beyond a doubt entitled to be admitted."

Upon termination of her parole, Gil fell under § 1225(b)'s mandatory detention provision. She is present in the United States, has not been lawfully admitted, and does not fall within any of the exceptions to § 1225(b)(2)(A). *See* Docs. 13-1, 13-2. Nor has she established that he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The statute therefore treats her as an applicant for admission subject to mandatory detention. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) ("Presence without admission deems [petitioners] to be applicants for admission.") (citing 8 U.S.C. § 1225(a)(1)).

## DISCUSSION

Gil's petition presents four counts. *See generally* Doc. 10. She asserts that each justifies her immediate and unconditional release, yet she ultimately bears the burden of proving that her custody violates federal law. *Whitfield v. U.S. Sec'y of*

4

*State*, 853 F. App'x 327, 329 (11th Cir. 2021); *Martin v. Beto*, 397 F.2d 741, 749 (5th Cir. 1968). Though enumerated separately, each count within Gil's petition presents fundamentally the same claim: that her detention violates her due-process rights. The Court therefore addresses those claims together.

## I.     Counts 1-4: Violation of Due Process

Gil argues that her detention violates her Fifth Amendment Due Process rights, amounts to unlawful and prolonged detention, causes irreparable harm to herself and her children, and violates principles of fundamental fairness. *See* Doc. 10 at 7-8; *see also* Doc. 11.

The Fifth Amendment requires the Government to provide due process before depriving a person of life, liberty, or property. *Dep't of State v. Munoz*, 602 U.S. 899, 909-10 (2024). Due process protects not only fair procedure but also certain "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Id.* at 910 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). As such, Gil's claim regarding "fundamental fairness" is interchangeable with her Due Process claim. Doc. 10 at 7-8.

"Aliens unlawfully present in the United States have no fundamental right to move freely about the country." *Palma v. Powell*, No. 7:26-CV-299, 2026 WL 701778, at *12 (N.D. Ala. Mar. 12, 2026); *see also, e.g.*, *League of United Latin Am. Citizens (LULAC) v. Bredesen*, No. 3:04-0613, 2004 WL 3048724, at *4 (M.D.

5

Tenn. Sept. 28, 2004). Rather, the Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). The Supreme Court thus "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). Though individuals unlawfully present in the United States possess due-process rights, those rights exist within the bounds set by rule and statute, as "the through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Munoz*, 602 U.S. at 911-12. And the Supreme Court has "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. "The Government may, therefore, restrain aliens unlawfully present from enjoying the privileges and liberties associated with lawful presence and citizenship pending deportation, such as the right to be free from detention." *Palma*, 2026 WL 701778, at \*12; *see also Fernandez-Fajardo v. I.N.S.*, 193 F. Supp. 2d 877, 880 (M.D. La. 2001).

Gil argues that she has been subjected to unreasonably prolonged detention without sufficient justification. Doc. 10 at 7. She argues that because she poses no

6

danger to the community and does not pose a flight risk, that the Government must justify its continued detention of her pending deportation. *Id.*

This Court has repeatedly rejected such claims. *See, e.g.*, *Palma*, 2026 WL 701778, at *12-13; *Ayala v. Harper*, No. 1:26-CV-204, 2026 WL 501113, at *9-11 (N.D. Ala. Feb. 23, 2026); *Martinez v. Powell*, No. 7:26-CV-145, Doc. 23 at 9-10 (N.D. Ala. Feb. 25, 2026). Forcing the Government to determine individually whether each detained alien constitutes a danger to the community or a flight risk would be to, in effect, require the Government to employ the least-restrictive means to accomplish the removal of such aliens. But the Supreme Court has rejected such arguments, holding that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. And that mandatory detention does not violate due process "for the limited period" of the aliens' "removal proceedings." *Id.* at 531.

Gil "is due no process beyond the process Congress gave [her]," and "Congress chose to withhold bond hearings from applicants for admission, so the Fifth Amendment does too." *Ayala*, 2026 WL 501113, at *11. The Supreme Court has repeatedly confirmed the constitutionality of such mandatory detention pending removal. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138-40 (2020); *see also Demore*, 538 U.S. at 523, 531. As the Court explained in

*Thuraissigiam*, an alien who has never been lawfully admitted "has only those rights regarding admission that Congress has provided by statute," and the Due Process Clause requires nothing further. 591 U.S. at 138-140. Indeed, aliens who enter the country illegally, "even those paroled elsewhere in the country for years pending removal," are treated for due-process purposes "as if stopped at the border." *Id.* at 139.

Because Gil was never lawfully admitted to the United States, even though temporarily permitted to remain on parole, her due-process rights are limited to those provided by statute. *Cf. Jandres-Ordonez v. Bondi*, No. 6:25-CV-084, 2026 WL 274493, at *12 (N.D. Tex. Jan. 23, 2026). And by statute, § 1225(b) mandates her detention until "certain proceedings have concluded" and says nothing "whatsoever about bond hearings." *Id.*; *see also Kameron v. Dep't of Homeland Sec.*, No. 7:19-CV-16, 2020 WL 9460465, at *2 (M.D. Ga. Mar. 27, 2020).

Gil further argues that the rescheduling of her immigration hearing from May 9, 2028, to April 7, 2026, following her habeas petition "raises serious constitutional concerns." Doc. 11 at 1. Invoking *Mathews v. Eldridge*, 424 U.S. 319 (1976), Gil contends that due process requires a "meaningful opportunity to be heard at a meaningful time and in a meaningful manner." Doc. 11 at 1. And her reply contends that the "abrupt change significantly undermines [her] ability to prepare her case, secure evidence, and meaningfully present her claims for relief." Doc. 16 at 5. But

Gil's procedural due process claim is both premature and presented to the wrong tribunal. Gil can raise her due process arguments about timing and the ability to be heard before the immigration judge, the Board of Immigration Appeals (BIA), and ultimately the Eleventh Circuit by a petition for review of a final order. 8 C.F.R. §§ 1003.1(b)-(d), 1003.38. She cannot raise them here now, for it is only the "failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). And there is no argument that the whole administrative process, with its appeals, will not provide due process.

Relatedly, an "allegation of a due process violation"—like a denial of "a full and fair hearing before a neutral factfinder—is precisely the kind of procedural error which requires exhaustion" before the BIA, before being raised in a petition for review with the Eleventh Circuit. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1251 (11th Cir. 2006). Gil cannot raise in this Court a claim of a future procedural error that she has not tried to present through the channels Congress has prescribed. *See* 8 U.S.C. § 1252(d)(1).

Finally, Gil's argument that her detention causes severe hardship for her family, Doc. 10 at 7, does not warrant habeas relief. The Constitution "does not ordinarily prevent the government from taking actions that indirectly or incidentally

burden a citizen's legal rights." *Munoz*, 602 U.S. at 917 (internal quotation omitted). While Gil has presented evidence of the costs her detention is imposing on her and her family, that evidence does not create an independent ground for habeas relief. Gil's detention does not violate federal law and thus her petition must be denied.

## CONCLUSION

Gil fails to demonstrate that she is entitled to habeas relief. Accordingly, the Court **DENIES** her habeas petition (Doc. 10) on the merits.

**DONE** and **ORDERED** this 14th day of April, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE